AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| | |
|---|---|
| United States of America<br>v.<br>Richard Coleman<br><br>*Defendant(s)* | )<br>)<br>) Case No. 25-mj-17032<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __March 2025 - April 2025__ in the county of __Camden__ in the _____ District of __New Jersey__, the defendant(s) violated:

| Code Section | Description of Offenses |
|---|---|
| 18 USC 371<br>18 USC 922(g)(1) | See Attachment A. |

This criminal complaint is based on these facts:
See Attachment B.

☑ Continued on the attached sheet.

_____
Complainant's signature

SA Gerard Infantino, ATF
_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephone__ *(specify reliable electronic means)*.

Date: __05/12/2025__

Shawn A. King
_____
Judge's signature

City and state: __Camden, New Jersey__   Hon. Sharon A. King, U.S. Magistrate Judge
_____
Printed name and title

**CONTENTS APPROVED**

**UNITED STATES ATTORNEY**

By: *Joseph McFarlane*
_____
JOSEPH MCFARLANE
Assistant U.S. Attorney

Date: May 8, 2025

## ATTACHMENT A

## COUNT ONE

### Conspiracy to Sell Firearms Without a License

1. From in or about March 2025 through April 2025, in Camden County, in the District of New Jersey, and elsewhere, the defendant,

### RICHARD COLEMAN,

did knowingly and intentionally agree with Robert Bruce, and others known and unknown, to engage in the business of importing, manufacturing, and dealing in firearms, and in the course of such business to ship, transport, and receive firearms in interstate and foreign commerce, without being licensed to do so under federal firearms law, contrary to Title 18, United States Code, Section 922(g)(1)(A).

2. It was the object of the conspiracy to obtain firearms and ammunition that had moved in interstate commerce and sell them to a confidential informant (the "CI").

3. It was a further part of the conspiracy that COLEMAN and others caused firearms and/or ammunition to be sold to the CI on March 3, 2025, March 18, 2025, and April 4, 2025.

4. In furtherance of the conspiracy and to effect the objects thereof, the following overt acts were committed in the District of New Jersey and elsewhere:

   a. On or about March 3, 2025, Bruce sold an ABC-15 rifle, bearing serial number 77-5609, and 17 rounds of 5.56 ammunition, to the CI.

   b. On or about March 18, 2025, Bruce sold a Sig Sauer .40 caliber pistol, bearing serial number AD25936, 20 rounds of 9mm ammunition, and 21 rounds of .40 caliber ammunition, to the CI.

   c. On or about April 4, 2025, COLEMAN sold a privately manufactured firearm and five rounds of .40 ammunition to the CI.

In violation of Title 18, United States Code, Section 371.

## COUNT TWO

### Possession of Ammunition By a Prohibited Person

On or about April 5, 2025, in Camden County, in the District of New Jersey, and elsewhere, the defendant,

### RICHARD COLEMAN,

knowing that he had previously been convicted in a court of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess a .40 caliber privately made firearm, commonly referred to as a "ghost gun," and ammunition, namely, five rounds of .40 caliber ammunition, and the ammunition was in and affecting commerce.

In violation of Title 18, United States Code, Section 922(g)(1).

## ATTACHMENT B

1.      I, Gerard Infantino, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been and have been so employed since 2018. I have attended the Criminal Investigator Training Program and ATF Special Agent Basic Training at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. My primary responsibilities include investigating individuals and/or groups who commit violations of federal firearms laws. During my tenure as an ATF agent, I have been a part of numerous investigations, which have resulted in the arrests of individuals who have committed violations of federal law. Prior to my current employment with ATF, I was employed as a Police Officer/Detective.

2.      In February 2025, ATF agents learned through an ATF source and other local law enforcement sources that ROBERT BRUCE was engaged in firearms trafficking and was offering firearms for sale. ATF agents also learned that BRUCE's source for the firearms was RICHARD COLEMAN, who obtained the firearms from a state in the southern United States.

3.      An ATF confidential informant ("CI")[1] began communicating with BRUCE via the Bruce Phone.

4.      On March 3, 2025, in a recorded transaction, the ATF CI purchased a firearm from BRUCE in Sicklerville (Gloucester Township), New Jersey. The firearm sold by BRUCE was an ABC-15 rifle, bearing serial number 77-5609. BRUCE also sold the CI 17 rounds of 5.56 ammunition.

5.      Following the March 3 sale, BRUCE told the CI that BRUCE's source(s) had multiple other firearms for sale. BRUCE instructed the CI to meet BRUCE at BRUCE's house on March 13, 2025.

6.      On March 13, 2025, the CI met BRUCE at BRUCE's house in Sicklerville (Gloucester Township), New Jersey. During a recorded conversation, BRUCE told the CI that BRUCE had to leave to pick up an associate and left the CI at BRUCE's house. BRUCE drove away in his car. Law enforcement officers

---

[1] The CI expects to receive financial compensation in exchange for information. The CI has previously provided information as a confidential informant. Agents have been able to corroborate information provided by the CI through records, surveillance, and other investigative actions. The CI, therefore, is reliable and credible.

surveilled BRUCE and observed him driving erratically and evasively, using tactics similar to those used by criminals to evade law enforcement surveillance.

7. Law enforcement officers observed BRUCE return to his house with COLEMAN in the passenger seat of BRUCE's car. BRUCE told the CI to follow BRUCE and COLEMAN to a meeting location in Camden.

8. BRUCE and COLEMAN, with the CI following in a separate car, drove to the parking lot of a meat market in Camden, New Jersey. In the parking lot, COLEMAN called one of his suppliers. The supplier told COLEMAN that he was unavailable to meet because he (the supplier) was with his children and did not conduct criminal activity in front of them.

9. While in the parking lot, COLEMAN told the CI that COLEMAN sells "dog food," which the CI understood was a slang term for heroin. BRUCE told the CI that COLEMAN also deals in stolen cars.

10. COLEMAN then called a second supplier, whom he identified as "K Dot," and attempted to arrange for a sale of firearms to the CI by K Dot. Ultimately, after a period of delay, ATF agents decided to terminate the meeting for safety reasons. No firearms or narcotics were purchased that day.

11. Following the failed transaction on March 13, BRUCE was apologetic to the CI and told the CI that the firearms sources were hesitant to meet face-to-face. BRUCE also offered to sell BRUCE's personal gun to the CI so that BRUCE would have funds available to make a purchase from a firearms source.

12. On March 18, 2025, BRUCE met with the CI and sold BRUCE's personal firearm, a Sig Sauer .40 caliber pistol, bearing serial number AD25936, 20 rounds of 9mm ammunition, and 21 rounds of .40 caliber ammunition to the CI. BRUCE also told the CI that the CI could call COLEMAN directly to discuss the purchase of narcotics. The transaction was recorded.

13. BRUCE then called COLEMAN. The CI spoke directly with COLEMAN and COLEMAN told the CI that COLEMAN was willing to sell 28 baggies of heroin to CI for $60.

14. Subsequently, BRUCE and the CI communicated to arrange for the sale of a pistol to the CI and BRUCE sent to the CI a picture of the pistol.

15. On April 4, 2025, the CI went to BRUCE's house to purchase the pistol. When the CI arrived, BRUCE's vehicle was not there. Law enforcement officers located BRUCE and his vehicle at a different location in Sicklerville and observed COLEMAN enter BRUCE's car. BRUCE and COLEMAN then drove to BRUCE's house.

16. Upon arriving at BRUCE's house, COLEMAN exited BRUCE's car and got into the CI's car. COLEMAN then directed the CI to drive to a location in Clementon, New Jersey. COLEMAN exited the car and returned a short time later with a pistol loaded with five rounds of ammunition. COLEMAN told the CI that he had cleaned fingerprints off the bullets and had also cleaned the firearm. COLEMAN sold the firearm and ammunition to the CI for $1,250. The sale was recorded.

17. The firearm was a .40 caliber privately manufactured firearm, commonly referred to as a ghost gun, with a 31-round magazine. The ammunition was assorted .40 caliber bullets.

18. Following the April 4 sale, BRUCE told the CI that he had two more firearms to sell him, sent photographs of two pistols, and offered to sell them for $2,400. BRUCE and the CI agreed to meet for the sale on April 9, 2025.

19. On April 9, 2025, the CI called BRUCE and told him he was on his way to meet for the sale. BRUCE said he was unavailable to meet because he was at work. BRUCE later told the CI that the two pistols he previously offered to sell had already been sold, but that COLEMAN could obtain two privately manufactured firearms for $2,300. BRUCE stated that one of the firearms was in Camden and that COLEMAN could obtain the other from Philadelphia. Ultimately, the CI told BRUCE that he could not wait any longer and so no purchases were made that day.

20. Later that day, BRUCE called the CI and confronted him about not purchasing the firearms. COLEMAN then also later called the CI and stated that COLEMAN had ordered the firearms from his source of heroin/fentanyl and that COLEMAN would have to pay for the firearms if the CI did not go through with the purchase, or else there would be tension between COLEMAN and his source. COLEMAN called the CI again later that day and stated that he had resolved the issue with his source and that the CI should contact COLEMAN directly going forward regarding purchases of firearms and controlled substances.

21. Neither COLEMAN nor BRUCE are licensed to deal firearms and neither have a federal firearms license.

22. The firearm purchased on March 3, 2025, the firearm purchased on March 18, 2025, and the ammunition purchased on April 4, 2025, were all manufactured outside of the State of New Jersey.

23. Prior to March 3, 3025, BRUCE had been convicted in a court of crimes punishable by a term of imprisonment exceeding one year, including but not limited to:

   a. Possession of a controlled and dangerous substance on school property, in violation of N.J. Rev. Stat. § 2C:35-7; for which he received a sentence of 3 years' imprisonment on May 6, 2005;

   b. distribution of a controlled dangerous substance, in violation of N.J. Rev. Stat. § 2C:35-5; for which he received a sentence of 3 years' imprisonment on July 19, 2013;

   c. distribution of a controlled dangerous substance, in violation of N.J. Rev. Stat. § 2C:35-5; for which he received a sentence of 4 years' imprisonment on February 1, 2022; and

   d. distribution of a controlled dangerous substance, in violation of N.J. Rev. Stat. § 2C:35-5; for which he received an aggregate resentence of 4 years' imprisonment on February 2, 2022;

24. Prior to March 3, 3025, COLEMAN had been convicted in a court of crimes punishable by a term of imprisonment exceeding one year, including but not limited to:

   a. Conspiracy to commit theft by deception, in violation of N.J. Rev. Stat. § 2C:5-2; for which he received an aggregate resentence of 4 years' imprisonment on May 30, 2014;

   b. Unlawful possession of a firearm, in violation of N.J. Rev. Stat. § 2C:39-5; for which he received a sentence of 3 years' imprisonment on May 30, 2014;

   c. Attempted aggregated assault, in violation of N.J. Rev. Stat. § 2C:12-1; for which he received a sentence of 3 years' imprisonment on May 30, 2014;

_____
SA Gerard Infantino
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn and subscribed to me in
accordance with the requirements of

Fed. R. Crim. P. 4.1 via telephone
on May 12, 2025.

*Sharon A. King*

HON. SHARON A. KING
United States Magistrate Judge